605 So.2d 671 (1992)
Lemrell HARDEMAN, JR., Plaintiff-Appellant,
v.
C.J. BLACHE, Administrator Department of Employment Security of Louisiana and Southern Gulf Trucking, Defendant-Appellees.
No. 23968-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
Northwest Louisiana Legal Services, Inc. by Pamela P. Mitchell, Shreveport, for plaintiff-appellant.
*672 Frank T. Scott, Jr., Louisiana Office of Employment and Training, Baton Rouge, for the State of La.
Hal V. Lyons, Shreveport, for Southern Gulf Trucking.
Before SEXTON, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The claimant, Lemrell Hardeman, Jr., appeals a district court judgment affirming his disqualification from receiving unemployment compensation benefits. We affirm the judgment of the district court.

FACTS
The claimant began working for Southern Gulf Trucking in October, 1982. He was employed as a cross-country truck driver and was assigned to drive one of Southern Gulf's trucks. The claimant's last day of work for Southern Gulf was December 22, 1989. When he reported for work on January 5, 1990, he was informed that his employment was terminated for altering equipment on his truck. The employer found out that in violation of previous instructions, and company policy, the claimant had removed the factory installed radio in his assigned truck and had installed his personal AM/FM radio and cassette player. Further, the claimant had added large spot mirrors to the original factory installed mirrors on the truck. It was also determined that in the past, the claimant had installed a radio and mirrors to a company truck and at that time, although not terminated, the claimant was instructed not to repeat his actions.
The claimant was told that his present actions violated company policy which prohibited removal or modification of factory installed equipment on his assigned truck. This policy was contained in the policy manual distributed to employees. According to Rule 3E of the policy manual:
The following violations will result in dismissal for the first offense:
E. Tampering with the engine, truck, or equipment.
Claimant's employment was terminated because he violated this company policy a second time, after previously being warned not to do so.
Following his termination, the claimant applied for and qualified for unemployment compensation benefits. Southern Gulf appealed to an appeals tribunal of the Office of Employment Security, arguing that the claimant had been terminated for misconduct which disqualified him from receiving unemployment compensation benefits.
A hearing was held before an administrative law judge (ALJ). The claimant appeared at the hearing and testified on his own behalf. Appearing on behalf of the employer were Richard Webb, safety director of Southern Gulf, and Neale Haynes, vice president of Southern Gulf.
At the hearing the claimant acknowledged that he had received a copy of the company policy. The claimant also admitted replacing the radio and mirrors on the truck. He testified that while in Orange, Texas, on December 17, 1989, the radio in the truck ceased working and the weather conditions were snowy with sleet and ice. He contended that he had to replace the radio to keep up with weather reports. He also stated that he added the spot mirrors on the truck in order to see better.
Apparently these were not the first incidents in which the claimant was involved in the installation of mirrors and radios in company trucks. The claimant had previously added spot mirrors in 1988. Southern Gulf removed the mirrors and the claimant was told not to repeat his actions. Approximately one month later, in violation of the previous instructions, the claimant put his mirrors back on the truck. In September 1989, Southern Gulf discovered that the claimant had put the mirrors back on the truck and claimant was again told to remove them. Southern Gulf did not follow up to see if the claimant complied with the order.
The witness from Southern Gulf also testified that several years prior to the present incident, the claimant replaced a radio in his assigned truck and was warned at that time against tampering with the vehicle's *673 original equipment. Southern Gulf prohibited such conduct to prevent tampering with the electrical system of the truck and possibly causing breakdowns or electrical fires.
In connection with the present incident, Southern Gulf's witnesses also testified that after claimant was terminated, the original radio, which claimant testified had been removed because it was inoperable, was reinstalled. The radio was in proper working order. Southern Gulf also noted that at the time the original radio allegedly failed, the claimant "just happened to have" his own replacement radio with him.
Southern Gulf also pointed out that on December 17, 1989, when the claimant contended his factory installed radio failed him, the company had dispatchers on duty twenty-four hours a day. The claimant could have contacted Southern Gulf for instructions or permission regarding installation of a new radio. The claimant did not attempt to contact his employer before taking action.
On February 23, 1990, the ALJ found that the evidence showed that a discharge had occurred but that the reasons for the discharge did not meet the statutory test for misconduct. The ALJ affirmed the original determination of the Office of Employment Security assessing no disqualification to the claimant and found that the claimant should be allowed to draw unemployment compensation benefits.
Southern Gulf appealed the decision to the Board of Review of the Office of Employment Security. The board of review reversed the decision of the ALJ and found that the claimant was discharged for violation of company policy and this constituted misconduct within the meaning of the statute.
The board found that the claimant failed to act in the best interest of protecting his employment pertaining to removal of the factory installed radio from his assigned truck and replacing it with his personal AM/FM radio and cassette player. The board of review found that this action constituted intentional misconduct connected with the employment, disqualifying the claimant from receiving unemployment compensation benefits.
However, the board found that Southern Gulf did not prove by a preponderance of the evidence that the claimant was discharged because of adding mirrors to the truck. The board found that the employer was aware of this action in September 1989, told the claimant to correct the situation, but never followed up to see if he did so.[1]
The claimant appealed the case to the district court. The court reviewed the record and found that there was sufficient evidence to support the board's finding that the claimant violated company policy in replacing the radio in the truck. The district court found that this was disqualifying misconduct precluding eligibility for unemployment compensation benefits and therefore the decision of the board of review was affirmed. The trial court also found that, pursuant to LSA-R.S. 23:1692, the costs of the proceeding are to be absorbed by the clerk of court.
The claimant appealed to this court. The claimant argues that the board of review and the district court erred as a matter of law in finding that the claimant violated company policy and that his violation constituted misconduct connected with his employment.

DISCUSSION
The scope of review in unemployment compensation cases is set forth in LSA-R.S. 23:1634 which provides in pertinent part:
In any proceedings under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law.
*674 Under LSA-R.S. 23:1634, a reviewing court must determine (1) whether the findings of fact by the board of review are supported by sufficient evidence; and if so, (2) whether the decision of the board of review is correct, as a matter of law. Charbonnet v. Gerace, 457 So.2d 676 (La. 1984); Lexing v. Francis, 572 So.2d 295 (La.App.2d Cir.1990); Sledge v. Whitfield, 531 So.2d 291 (La.App.2d Cir.1988); Johnson v. Whitfield, 521 So.2d 641 (La.App. 1st Cir.1988); Cox v. Lockwood, 373 So.2d 246 (La.App. 4th Cir.1979).
LSA-R.S. 23:1601(2)(a) defines disqualifying misconduct. That statute provides in pertinent part:
Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others. [Emphasis supplied.]
Misconduct connected with employment has been consistently interpreted to mean an act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior which the employer has a right to expect from his employee; or negligence in such degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional or substantial disregard for the employer's interest or of the employee's duties and obligations to the employer. Settoon v. Berg, 577 So.2d 338 (La.App. 1st Cir.1991); Pixley v. Blache, 488 So.2d 1126 (La.App.2d Cir.1986); Charbonnet v. Gerace, supra.
The employer bears the burden of proving that a discharge resulted from disqualifying misconduct. Banks v. Administrator of Department of Employment, 393 So.2d 696 (La.1981); Dorsey v. Administrator, Louisiana Department of Employment Security, 353 So.2d 363 (La.App. 1st Cir.1977), writ denied 355 So.2d 549 (La.1978).
The issue is primarily a factual one to be determined by the board of review. There must be legal and competent evidence to support the factual findings upon which the administrative determination turns. Banks v. Administrator of Department of Employment, supra.
The general rule, as outlined by a long line of jurisprudence, is that an employee who deliberately violates a reasonable rule of his employer is guilty of misconduct under the provisions of LSA-R.S. 23:1601(2). Fouts v. Delta Southern Company, 273 So.2d 909 (La.App. 1st Cir.1973). In some instances, even a single violation can sustain a denial of benefits. Johnson v. Whitfield, supra. However, at other times the deliberate violation of a rule by an employee does not automatically classify the action as misconduct. Pixley v. Blache, supra. In determining whether the violation constitutes disqualifying misconduct, one must look to the nature of the violation with due consideration of the factors which enter into the proper conduct of the employer's business. Johnson v. Whitfield, supra.
The claimant in the present case argues that the board of review and the district court erred as a matter of law in finding that replacing the radio in the employer's truck constituted misconduct justifying disqualification of the claimant from receiving unemployment compensation benefits. The claimant argues that during inclement weather conditions the radio in the truck ceased to work and he had to make a choice to protect his safety and the safety of others or to take the risk of driving without a radio in unknown weather conditions. The claimant urges that his decision to change the radio was in his employer's interest, not only because the action was taken to protect the claimant's life and that of fellow motorists, but was also aimed at protecting the employer's truck which had been entrusted to him. The claimant's arguments are meritless.
The company operated a large fleet of trucks and could not allow individual modification of each truck by employees. The employer had a rule that prohibited tampering with or altering equipment on the truck. The rule was reasonable and was aimed at preventing damage that might *675 occur to the truck through such actions. Specifically, the company objected to the removal of factory installed radios and installation of personal equipment due to the risk of damage to the truck's electrical system if the installation was not properly performed. The claimant was aware of the rule and had violated the rule on one prior occasion by substituting his own radio in the employer's truck. At that time, the claimant was told not to repeat his actions.
The claimant asserts that in this situation he was faced with an emergency when the radio failed and the weather was bad. He claimed he needed a radio to keep track of weather conditions. The claimant stated that he "happened to have" another radio with him when this situation arose.
The claimant could have called the company and asked for permission or instructions before undertaking on his own to replace the radio. Further, the employer presented testimony which showed that when the original radio was reinstalled, it was in operating condition. In addition, the record reveals that the claimant had a history of ignoring company rules regarding the alteration of equipment on its trucks.
Based upon the record before us, we find that the board of review and the district court were correct as a matter of law in finding that claimant's violation of a company rule constituted misconduct disqualifying him from receiving unemployment compensation benefits.

CONCLUSION
The findings of the board of review and the district court are supported by sufficient evidence and are correct as a matter of law. We therefore affirm the decisions of the board of review and the district court denying unemployment compensation benefits to the claimant, Lemrell Hardeman, Jr.[2]
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, Judge, Dissenting.
The evidence in this case was presented to an Administrative Law Judge (ALJ) who found that it did not meet the test for misconduct. The only evidence in the record to explain plaintiff's discharge in connection with the radio came from Neale Haynes as follows:
It wasn't the radio. It was the fact that you did it yourself without talking to anybody about it. And you didn't put in just a radio. You put in a stereo tape player.
I cannot characterize a statement by Haynes in argument that "he did it before" as adequate by itself to support the finding that plaintiff had violated this rule on a prior occasion.
It was the employer's burden to prove misconduct and I agree with the ALJ that what was shown falls far short of demonstrating "willful or wanton disregard of the employer's interest" or "a deliberate violation" or "negligence ... as to manifest culpability, wrongful interest or evil design...."
NOTES
[1] The finding of the board of review that the installation of mirrors by the claimant did not constitute misconduct was not appealed by either party. Therefore the board's decision regarding the mirrors is final and is not before this court on appeal.
[2] Costs in this court and in the court below are to be absorbed by the respective clerks of court. See LSA-R.S. 23:1692.