651 So.2d 508 (1995)
Donna C. GOBERT, Plaintiff-Appellant,
v.
LOUISIANA DEPARTMENT OF EMPLOYMENT SECURITY, Department of Labor, State of Louisiana and Calcasieu Women's Shelter, Defendants-Appellees.
No. 94-1018.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1995.
*509 James Edward Burks, Lake Charles, for Donna C. Gobert.
Frank Theo Scott Jr., Baton Rouge, for Louisiana Dept. of Employment Sec.
Jeanne Marie Sievert, Lake Charles, for Calcasieu Women's Shelter.
Before DOUCET, C.J., and LABORDE, THIBODEAUX, COOKS and SULLIVAN, JJ.
THIBODEAUX, Judge.
This is a suit for unemployment compensation benefits. Claimant-appellant, Donna C. Gobert, appeals her denial of benefits after being discharged from her job at the Calcasieu Women's Shelter (Shelter) in Lake Charles. The district court affirmed a decision of the Board of Review for the Office of Employment Security which upheld her termination.
Because the facts do not constitute misconduct by Ms. Gobert associated with her employment, we reverse the judgment of the trial court and order the payment of unemployment benefits.

ISSUE
No complaint regarding the correctness of the administrative law judge and Board of Review's factual findings has been made on appeal. Therefore, the only issue is whether the factual findings in this case legally justified claimant's disqualification due to misconduct connected with her employment.

FACTS
The facts as found by the administrative law judge and affirmed by the Board of Review are as follows:

*510 "The claimant worked with the employer about nine and one-half years as Secretary/Bookkeeper. The last evaluation noted a change in the claimant's cooperation with coworkers [sic] and acceptance of supervisory criticism. The employer had an established grievance procedure. A worker must go to the Director first. A written complaint should be discussed at that level within seven days of being presented. Once the Director makes a decision on the complaint the complainant may send a copy of the complaint to the Personnel Committee for further consideration. The claimant had ready access to the names, telephone numbers and addresses of the Committee members. An incident occurred on December 29, 1992, when the claimant was counselled about comments made by a co-worker that accused the claimant of assisting this person to make a grievance against the Director. The claimant wrote a response to this counselling and said that she would take this to the "Board" if she was not satisfied with the results. Due to further discussion the nature of the counselling was downgraded. She did not attempt to submit a written grievance to the Personnel Committee. The Director assumed that the matter was resolved. Soon after that time the claimant submitted her vacation request. Two of the three weeks were immediately approved. The third week (claimant was requesting Christmas 1993) was denied at that time. The Director indicated that she could not approve that week for anyone at this time, but the claimant could check back later and that she would be given first consideration for this time. The claimant wrote a complaint to this decision and she and the Director discussed the matter. After the discussion the claimant took no further action about presenting this matter in writing to the Personnel Committee. Then on March 17, 1993, the claimant wrote a complaint about an incident with another employee. There was discussion with the Director after this incident. The claimant took no further action. She was still unhappy about these situations. About March 23, 1993, she spoke to one of the Personnel Committee members about the possibility of meeting to discuss what she felt were problems at the center. She did not feel that this person was responsive to her request and did not pursue any written request. Instead she sent a letter to EEOC outlining every problem she had and every letter she had written back to December 1992. The employer received notification about May 10, 1993, that the claimant was filing this complaint with the EEOC. Since there was no record of the claimant attempting to submit written request for resolution of grievance through the employer before attempting to seek outside assistance, she was held to have violated the employer policy about following a chain of command in the grievance policy and failing to accept supervisory decisions. She was terminated."
Gobert's claim for unemployment compensation benefits was denied based upon her termination for misconduct in that she failed to follow the chain of command in regard to grievances. Specifically, Gobert failed to submit a written complaint to the Shelter's personnel committee after being dissatisfied with the Director's resolution of her complaints.

LAW AND DISCUSSION
The Shelter argues that Gobert's failure to follow its policy regarding resolving grievances was misconduct warranting her disqualification from unemployment compensation benefits. On the other hand, the Louisiana Department of Labor, Office of Employment Security (Department), and Gobert argue that the employer failed to satisfy its burden of proving misconduct on the part of Gobert. Therefore, they argue the trial court incorrectly found that Gobert's failure to follow the grievance procedures, which served as a basis for her termination from her employment at the Shelter, constituted disqualifying misconduct.
Louisiana Revised Statute 23:1601(2)(a), as amended in 1990, reads, in pertinent part, as follows:
An individual shall be disqualified for benefits:
(2)(a) If the administrator finds that he has been discharged by a base period or *511 subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others ...
The 1990 amendment provided the statutory definition of misconduct.
Prior to the amendment, the Louisiana Supreme Court in Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984), strictly construed the definition of misconduct within La.R.S. 23:1601, as that resulting from:
"... willful or wanton disregard of the employer's interest, from deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees."
The above quoted judicially created definition of "misconduct," which requires either intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard of the employer's interest, has been applied by the Second Circuit and the Fourth Circuit in interpreting the statute as amended in 1990. Wood v. Department of Employment Security, 632 So.2d 899 (La.App.2d Cir.1994); Hardeman v. Blache, 605 So.2d 671 (La. App.2d Cir.1992); Emke v. Mouton, 617 So.2d 31 (La.App. 4th Cir.1993).
We agree with our brethren of the Second and Fourth Circuits, and apply the well established definition of misconduct. Furthermore, an employer contending that a claimant is disqualified from receiving unemployment benefits has the burden of proving willful misconduct by a preponderance of the evidence. Operators, Inc. v. Comeaux, 579 So.2d 1228 (La.App. 3d Cir.1991). Moreover, because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification. Id.
The grievance procedures of the Shelter provide that when an employee who has submitted to the Director a written, signed and dated statement of his or her problem and that problem is unresolved, that employee "may submit a copy of the written grievance to the Personnel Committee."
Whether a violation of the employer's rule, resulting in discharge, warrants the withholding of unemployment compensation benefits must be determined, not by the employer's rules, but by the statute. Cabezas v. Administrator, Division of Employment Security, 557 So.2d 985 (La.App. 4th Cir.1990). According to the Shelter, the failure of Gobert, on three occasions, to submit her unresolved grievances in writing to the Personnel Committee and to instead file those grievances with the EEOC, warrants her termination as dictated by the grievance procedure policy. In this case, Gobert wrote grievance letters and placed them in her file. She also discussed her problems with the Director. Gobert testified as to her understanding of the grievance procedure. Her understanding was that upon dissatisfaction with the resolution of a grievance after submission to the Director, that it was up to the Director of the Shelter to take it to the next level, that is, the Personnel Committee. Gobert telephoned at least two committee members to discuss the problems she was having at the Shelter. Since Gobert's failure to follow the grievance procedure was based upon her misunderstanding the procedure, such action on her part when her problems went unresolved cannot be deemed a deliberate violation of the employer's interest sufficient to deny Gobert unemployment compensation benefits. Gobert, like the claimant in Cabezas, supra, by writing her grievances, discussing them with the Director, and telephoning the committee members about her problems, made a good faith effort to comply with the Shelter's policies; therefore, the requisite intent for disqualification is absent.
Furthermore, the administrative law judge found that the employer had received notification from the Equal Employment Opportunity Commission on May 10, 1993 that Ms. Gobert had filed a complaint with that agency. It went on to find that:
"Since there was no record of the claimant attempting to submit written request for *512 resolution of grievance through the employer before attempting to seek outside assistance, she was held to have violated the employer policy about following a chain of command in the grievance policy and failing to accept supervisory decisions. She was terminated."
In her opinion, the administrative law judge wrote:
"She [Gobert] then took the matters outside the agency [to the EEOC] without exhausting the procedures within the agency. Since she indicated such knowledge of this policy, her action are [sic] considered misconduct connected with the employment. The determination is correct."
Stripped of all subterfuges, the record is clear that Ms. Gobert's termination was precipitated by the Shelter's receipt of her EEOC complaintshe was released the same day. The administrative law tribunal recognized this as a fact, yet countenanced this illegality[1] by finding misconduct. We decline to further exacerbate the Shelter's impropriety by affirming the district court's judgment. As a matter of law, the termination was improper.

CONCLUSION
The decisions of the administrative law judge, Board of Review and the trial court were not correct as a matter of law. The Louisiana Employment Security Law is remedial in nature and should be interpreted to extend its benefits as far as possible within the bounds imposed by express legislative restrictions. Craighead v. Administrator, 420 So.2d 688 (La.App.2d Cir.), writ denied, 422 So.2d 154 (La.1982).
For the reasons stated above, the judgment appealed from is reversed. The Department of Employment Security is ordered to pay Donna C. Gobert the unemployment compensation benefits to which she is entitled by law. Costs are assessed against Defendant-Appellee, Calcasieu Women's Shelter.
REVERSED AND RENDERED.
DOUCET, C.J., dissents and assigns written reasons.
DOUCET, Chief Judge, dissenting.
I respectfully dissent from the opinion of the majority in this matter. I can find no error in the ruling at the trial level. The district judge based his ruling that Ms. Gobert was not entitled to unemployment benefits on a finding that "the persistent course of conduct she has engaged in" over time was the misconduct leading to her firing, rather than the failure to follow grievance procedures. Accordingly, he affirmed the prior finding of the administrative law judge. The record confirms that Ms. Gobert was not a satisfactory employee. Her last job performance evaluation states that Ms. Gobert had a history of problems with cooperation with her co-workers and with the acceptance of criticism from supervisors. This was not the first time she failed to follow her employer's grievance procedures. Further, the record does not support Ms. Gobert's purported lack of understanding of the grievance procedure. The record reflects that she had read the procedure "over and over" and was confused by it. However, she never asked any questions when the procedure was discussed at staff meetings. Since the record reflects that the procedure was frequently discussed at staff meetings, any confusion on the part of Ms. Gobert was of her own making. Accordingly, her failure to follow the procedure constitutes a deliberate violation of the employer's interest sufficient to deny Gobert unemployment benefits. The trial court correctly found that her course of conduct constituted misconduct as defined by our law.
Therefore, I would affirm the ruling of the trial court.
NOTES
[1] See 42 U.S.C. § 2000e-3(a).