662 So.2d 34 (1995)
TACO BELL CORPORATION
v.
Johnita PERKINS, et al.
No. 95-CA-225.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 1995.
*35 John T. Culotta, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for Plaintiff/Appellant.
J. Jerome Burden, Olivette E. Mencer, Baton Rouge, for Defendant/Appellee (Louisiana Department of Labor, Office of Employment Security).
Before GOTHARD and CANNELLA, JJ., and CHEHARDY, J. Pro Tem.
GOTHARD, Judge.
In this unemployment compensation matter, plaintiff appeals the trial court's denial of plaintiff's motion for trial of a summary proceeding. For the following reasons, we affirm.
FACTS
The basic facts, as recited by the Administrative Law Judge (ALJ), are as follows:
The claimant worked for the above named employer [plaintiff, Taco Bell Corporation] for approximately three years, from early December, 1989 to December 25, 1992. She worked as a permanent, part-time shift manager, working thirty-eight to forty hours per week at a rate of pay of $6.50 per hour.
The incident that caused the claimant to be discharged occurred on December 25, 1992. On closing the store for the Christmas day holiday, the claimant allowed the entire crew to leave the store at the same time. The crew was robbed at gun point in the parking lot. The claimant was on her way to the bank to make a deposit. Store receipts of approximately $2,000 were also taken. The claimant was discharged for violation of company security and safety policies and for her alleged failure to follow [restaurant manager Brian] Goldstein's instructions on how to handle the bank deposit. Goldstein alleged that he specifically instructed the claimant to call the police before leaving the store to arrange an escort to the bank to make the deposit.
Company policy dictates a procedure for closing. Company policy is that at closing, one person goes to the car and drives to the end of the parking lot, while another person waits inside by a phone in the event that the employee is accosted. The person in the car then waits for the last employee in the store and sees that the person gets into their car without problem.
The claimant did view a video tape on "crime and violence prevention" at the time of hire. The training tape specifically demonstrates closing procedures. The claimant also was required to extensively review store procedures and policies in training for her position as a manager. The claimant, however, denied that she was specifically aware of the departure procedure and denied that she was instructed by Goldstein to call for a police escort.
The claimant was originally hired as a crew person and she viewed the crime and violence prevention video while working as a crew member. As a crew member, she occasionally worked on the closing shift, but, she did not close, nor did she observe the manager in charge demonstrate the proper procedure. When promoted to shift manager in mid-1992, the claimant was transferred from the employer's Westbank store to the employer's Veterans Boulevard store. The Veterans store is a twenty-four hours store and does not close, *36 except for Thanksgiving and Christmas. When the store closed on Thanksgiving, the claimant was responsible for the closing and the bank deposit. As part of the Thanksgiving closing, the claimant was given the option of either an employee [following her to the bank] or police escort for the deposit. The Thanksgiving closing occurred in daylight hours. The employer maintain[s] that because the Christmas deposit was to be done at night, the claimant was instructed to call the police for an escort.
Apart from the incident that caused the claimant to be discharged, she was considered to be an exemplary employee.
On March 26, 1993, the ALJ rendered a decision, finding that Taco Bell failed to prove by a preponderance of the evidence that claimant, Johnita Perkins, "willfully or deliberately violated company policy or the instructions of Goldstein." She was therefore granted unemployment compensation. Taco Bell appealed the decision of the ALJ to the Board of Review for the Office of Employment Security, which on May 13, 1993, affirmed the decision of the ALJ in all respects.
On May 26, 1993, Taco Bell filed a "Petition for Judicial Review" in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.[1] Taco Bell thereafter moved the district court for a "trial of a summary proceeding" pursuant to LSA-R.S. 23:1634. After a hearing, on plaintiff's motion on October 26, 1994, the district court rendered judgment in favor of defendant. Taco Bell appeals.

ANALYSIS
The applicable statute herein is LSA-R.S. 23:1601, as amended in 1990, which provides in pertinent part:
An individual shall be disqualified for benefits:
* * * * * *
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
Judicial review in an unemployment compensation case is limited by LSA-R.S. 23:1634. The reviewing court must determine (1) whether the findings of fact by the Board of Review are supported by sufficient evidence, and if so, (2) whether the decision of the Board is correct as a matter of law. In the absence of fraud, the Board's findings are conclusive as to the facts of the case, confining judicial review to legal questions only. Toney v. Francis, 618 So.2d 597, 599 (La.App. 2 Cir.1993), citations omitted.
The Board adopted the ALJ's findings of fact; these are not disputed and are supported by sufficient evidence. Our review, therefore, addresses only whether Ms. Perkins' termination was for misconduct connected with her employment.
On appeal, plaintiff argues that the 1990 amendment, "in providing a specific definition of the term `misconduct', which explicitly did not require the use of the term `willful' in cases in which the employees [sic] misconduct jeopardized the lives of others, constitutes a solemn expression of legislative will aimed at departing from prior jurisprudential interpretation of La.R.S. 23:1601 which could impose the requirement of an intent or willfulness requirement upon misconduct in these situations." We disagree.
Prior to the 1990 amendment, in Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984), the Louisiana Supreme Court strictly construed the definition of misconduct within R.S. 23:1601, as that resulting from "willful or wanton disregard of the employer's interest, from deliberate violation of the employer's rules, or from a direct disregard of *37 standards of behavior which the employer has the right to expect from his employees."
Since the 1990 amendment to R.S. 23:1601, our brethren on the Second, Third and Fourth Circuits have addressed the legislative definition of misconduct in unemployment compensation matters, and have all concluded that "misconduct" still requires either intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard of the employer's interest. See Wood v. Department of Employment Security, 632 So.2d 899 (La.App. 2 Cir.1994); Hardeman v. Blache, 605 So.2d 671 (La.App. 2 Cir.1992); Gobert v. Louisiana Department of Employment Security, 651 So.2d 508, 94-1018 La. App. 3 Cir. 3/8/95; and Emke v. Mouton, 617 So.2d 31 (La.App. 4 Cir.1993).
We agree with our brethren on the Second, Third and Fourth Circuits, and apply the well established definition of misconduct. Further, an employer contending that a claimant is disqualified from receiving unemployment benefits has the burden of proving willful misconduct by a preponderance of the evidence. Operators, Inc. v. Comeaux, 579 So.2d 1228 (La.App. 3 Cir.1991). Moreover, because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification. Id.
However, we agree that an examination of the employer's showing of misconduct must consider all the circumstances, and that misconduct must be determined on a case-by-case basis. In determining whether the violation constitutes disqualifying misconduct, one must look to the nature of the violation with due consideration of the factors which enter into the proper conduct of the employer's business. Hardeman, supra at 674.
At the ALJ hearing, Ms. Perkins testified that although she had viewed the "crime and violence prevention" videotape which showed Taco Bell's procedure for exiting a closed store, she never participated in a closing where the procedure was used. Furthermore, Ms. Perkins testified that when she was promoted to manager, she was transferred to the Veterans store, which only closes two days a year (Thanksgiving and Christmas). She closed the store on Thanksgiving (during daylight hours) and had another employee follow her to the bank to make the deposit. The only other time she closed was early Christmas morning, when the robbery took place. Ms. Perkins also denied that Mr. Goldstein instructed her to call for a police escort, but gave her the option (as he did for the Thanksgiving closing) of having another employee follow her to the bank.
The general rule, as outlined by a long line of jurisprudence, is that an employee who deliberately violates a reasonable rule of his employer is guilty of misconduct under the provisions of LSA-R.S. 23:1601(2). Hardeman, supra at 674 (emphasis ours). Furthermore, the employer seeking to disqualify an ex-employee from unemployment benefits carries the burden of proof of such willful and wanton disregard. Emke, supra at 33. After a thorough review of the record before us, we do not find that the requisite intent for disqualification is present.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Taco Bell's original petition was captioned: "Johnita Perkins versus Taco Bell Corporation and Administrator, Louisiana Department of Labor." It thereafter amended its petition so that it was correctly captioned: "Taco Bell Corporation versus Johnita Perkins and Louisiana Department of Labor."